<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| JEFFREY A. VANDERBEEK and RONALD J. DEL MAURO, Individually and on behalf of ARENA EQUITY PARTNERS, L.L.C., :<br><br>Appellants, :<br><br>v. :<br><br>BRIAN BAREFOOT, BRIDGEWATER SPORTS ARENA, L.P., NORTH FOLK BANK f/k/a The Trust Company of New Jersey, PORTER BRIDGE LOAN COMPANY, INC., and THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, :<br><br>Appellees. :<br><br>In re: :<br><br>BRIDGEWATER SPORTS ARENA, L.P., :<br><br>Debtor. : | Hon. Stanley R. Chesler<br>Civ. A. No. 05-3605 (SRC)<br><br>**O P I N I O N** |

<u>**CHESLER, District Judge**</u>

This matter is before the Court on Appellants' Jeffrey A. Vanderbeek

("Vanderbeek"), Ronald J. Del Mauro ("Del Mauro"), and Arena Equity Partners, L.L.C.[1]

("Arena" or "Appellants") appeal of a June 20, 2005 Order of the United States

---

[1] The members of Arena are Stephen W. Gruhin, Vanderbeek, Del Mauro and Mitchell Berlant.

Bankruptcy Court. The June 20, 2005 order: (a) granted Appellee Brian Barefoot's ("Barefoot") motion to direct the Debtor to disburse to the creditors a $250,000 deposit posted by Arena, and (b) denied Arena's cross-motion to return the Deposit to Arena. For the reasons set forth below, the order of the Bankruptcy Court will be **AFFIRMED**.

I.     BACKGROUND AND PROCEDURAL HISTORY

This appeal relates to an Order, dated June 20, 2005, and the accompanying Memorandum Opinion, dated June 2, 2005, wherein the Bankruptcy Court: (a) granted the motion of a creditor, Barefoot, directing Bridgewater Sports Arena L.P. ("Debtor") to disburse to creditors the $250,000 deposit posted by Arena, as purchaser under a sale agreement, and (b) denied the cross-motion of Appellants to return the Deposit to Arena. The Bankruptcy Court held the agreement between Debtor and Arena had terminated and therefore, implicated the liquidated damages provision of that agreement. The Bankruptcy Court also held that the liquidated damages clause was reasonable and enforceable.

Debtor owned and operated a family entertainment center located at 1425 Frontier Road, Bridgewater, New Jersey 08807 ("the Property"). On or about August 5, 2003, Debtor commenced a voluntary case under Chapter 11 of Title 11 of the United States Code ("Bankruptcy Code").

In April 2004, the Debtor, Arena, Arena's members, and the Debtor's general partner entered into a "Consensual Plan Proponent Agreement" in which it was agreed that Arena and the Debtor would enter into an asset purchase agreement. Pursuant to the agreement, Arena would fund the Debtor's plan of reorganization which would provide

for Arena to purchase substantially all of the Debtor's assets. (B. App. 12).[2] In May 2004, the Debtor filed a First Modified Disclosure Statement with the Bankruptcy Court which disclosed the highest third-party offer to acquire the assets as $5,750,000. (B. App. 24-5).

Debtor's counsel, Morris Bauer, Esq. ("Bauer") sent a draft of a purchase and sale agreement to one of Arena's members, Stephen Gruhin, Esq. ("Gruhin"). (B. App. 12). The draft provided for a $250,000 deposit, but did not provide for a liquidated damages clause. Instead, the draft gave Debtor the right to seek damages as a result of the purchaser's breach. (B. App. 13).

In August, 2004, Mr. Bauer re-sent the draft agreement to Arena's outside counsel Gerard Catalanello, Esq. ("Catalanello"). On August 19, 2004, Mr. Catalanello advised Mr. Bauer that he would send Arena's comments within a week. (B. App. 13). On October 4, 2004, Mr. Bauer received a redlined draft from Mr. Catalanello. (B. App. 14). Mr. Catalanello's draft deleted the Debtor's right to a damage claim and inserted instead, a clause describing the deposit as comprising liquidated damages. (Id.). A liquidated damages provision had never been discussed between the parties. (Id.).

Bauer sought to eliminate the liquidated damages clause in his redraft of October 27, 2004. (B. App. 14-15). Arena's counsel rejected the deletion of the liquidated damages clause and advised Mr. Bauer that his change was not acceptable. (B. App. 14-15). Mr. Bauer then requested that any liquidated damages should be between $250,000

---

[2]References in this Opinion to "(App.)" refer to the Appendix submitted by Appellants. References to ("B. App.") are to the Appendix submitted by Barefoot.

and $750,000, and later suggested the amount be compromised at $500,000. (B. App. 15). Arena's counsel rejected this proposal in an e-mail dated November 3, 2004 and advised that "$250,000 [the deposit amount] is more than fair." (B. App. 15).

On November 11, 2004, the Debtor and Arena executed the Arena Sale Agreement (the "Agreement"), which provided for a purchase price of $7 million and included the liquidated damages provision[3]. (App. 00323-24). The Agreement provided

---

[3]The termination and liquidated damages clauses provided in relevant part as follows:

Section 8: <u>Termination</u>. This Agreement and the transactions contemplated by this Agreement may be terminated as follows:

> (C) by the Seller, if there has been a material breach by the Purchaser of any of its representations, warranties, covenants, obligations or agreements set forth in this Agreement or in any writing delivered by the Purchaser under this Agreement and the Purchaser has not cured said material breach or Seller has not waived said material breach by the Closing Date;

> (G) by the Seller or the Purchaser, if the Closing has not occurred on or before the Termination Date, unless the Termination Date is extended by the Seller and Purchaser in writing.

Section 8.2: <u>Effect of Termination</u>. If this Agreement is terminated under Section 8.1, written notice thereof will forthwith be given to the other party and this Agreement will thereafter become void and have no further force and effect and, except for those provisions that expressly survive the termination of this Agreement, all further obligations of the Seller and the Purchaser to each other under this Agreement will terminate without further obligation or liability of the Seller or the Purchaser to the other, except that:

> (B) if the Closing does not occur as the result of the Purchaser's breach of any of the obligations set forth in this Agreement, provided that the Seller either has satisfied or is reasonably likely to satisfy the conditions set forth in this Agreement which are within the Seller's control to satisfy THEN THE RETENTION OF THE DEPOSIT SHALL BE THE SELLER'S SOLE AND EXCLUSIVE REMEDY UNDER THE AGREEMENT. IN CONNECTION WITH THE FOREGOING, THE PARTIES RECOGNIZE THAT THE SELLER WILL INCUR EXPENSE IN

for a closing date of December 10, 2004 and also provided that it might be terminated by either the Debtor or Arena if the closing does not occur on or before the termination date, unless the date is extended by both parties in writing.  (App. 00320, 00336).   The Agreement provided for a termination date of December 30, 2004.  (App. 00375).

On November 23, 2004, the Bankruptcy Court entered an Order confirming the Plan Supplement (the "Plan"), which incorporated the Agreement. (App. 00259).  Arena wired the $250,000 deposit to Debtor's counsel that same day. (B. App. 44).

On or about December 30, 2004, the Debtor and Arena executed an amendment to the Agreement, extending the termination date to January 6, 2005.  (App. 00375).  This extension was sought in an attempt to resolve internal management disputes occurring within Arena. (App. 00471).  Stephen Gruen and Michtell Berlant, two members of Arena, notified the Debtor that they had another party interested in closing the transaction: DJD Amusements, LLC ("DJD").  (Id.).   On December 30, 2004, DJD made

> CONNECTION WITH THE TRANSACTIONS CONTEMPLATED BY THIS AGREEMENT AND THAT IT IS EXTREMELY DIFFICULT AND IMPRACTICABLE TO ASCERTAIN THE EXTENT OF DETRIMENT TO THE SELLER THAT WOULD BE CAUSED BY A BREACH BY THE PURCHASER UNDER THIS AGREEMENT AND THE FAILURE OF THE CONSUMMATION OF THE TRANSACTIONS CONTEMPLATED BY THIS AGREEMENT OR THE AMOUNT OF COMPENSATION THE SELLER SHOULD RECEIVE AS A RESULT OF THE PURCHASER'S BREACH OR DEFAULT.  ACCORDINGLY, THE PARTIES RECOGNIZE AND ACKNOWLEDGE THAT RETENTION OF THE DEPOSIT IS THE ONLY REMEDY AVAILABLE TO THE SELLER BECAUSE THE SELLER'S DAMAGES RESULTING FROM THE PURCHASER'S DEFAULT HEREUNDER ARE EXTREMELY DIFFICULT TO ASCERTAIN AND THAT THE RETENTION OF THE DEPOSIT CONSTITUTES A FAIR AND REASONABLE AMOUNT OF LIQUIDATED DAMAGES HEREUNDER AND IS NOT A PENALTY.

a formal offer to replace Arena as the Purchaser under the contract. (App. 00376, 00387-00390). DJD's offer provided that DJD would purchase the assets for $7.1 million on the same terms as those set forth in the Plan, which incorporated the Agreement. (App. 00387). The Debtor and DJD executed a letter agreement that provides for DJD closing the transaction in the event that Arena failed to close. (App. 00376-77). Debtor then received a $1,000,000 deposit from DJD. (Id.).

On or about January 4, 2005, Jeffrey Vanderbeek and Ronald Del Mauro, the other two members of Arena, advised the Debtor that they may be interested in also becoming the "back-up plan funder." (B. App. 7). On January 5, 2005, the Debtor filed a motion with the Bankruptcy Court seeking to modify the Confirmation order and the Plan (the "Modification Application"). (App. 00385). The Modification Application noted that Vanderbeek and DelMauro wanted the opportunity to become the back-up plan funder, and also noted that a potential sale to DJD or to the Vanderbeek/DelMauro group would be by way of an asset purchase agreement that would incorporate by reference the terms and conditions of the Agreement. (B. App. 7).

During a hearing before the Bankruptcy Court on Janury 7, 2004, Mr. Catalanello informed the court that Arena wanted additional time to reconcile internal conflicts and sought a further extension of the closing date. (App. 00448). The closing date was extended until January 14. The Bankruptcy Court also scheduled a hearing for January 18, 2005 to be held if Arena failed to close on January 14. (App. 00453). Judge Ferguson stated that if Arena failed to close on January 14, an in-court auction would be held at the hearing on January 18. (App. 00453).

On January 18, 2005, the date for the Modification Application hearing, Debtor's counsel requested a one-day adjournment at the urging of Arena. (App. 00458). The Bankruptcy Court adjourned the hearing until January 24, 2005 and indicated that if Arena had not closed by that time, an in court auction would be held, or the case would be converted. (App. 00461).

The Bankruptcy Court conducted the hearing on January 24, 2005 at which point it was advised that Arena had not closed. (App. 00474). The Bankruptcy Court then terminated the Arena Agreement and proceeded to accept bids from potential funders. (App. 00481; 00490). DJD was the only bidder and its bid of $8.1 million was accepted by the Court. (App. 00491).

After the January 24, 2005 hearing, the Bankruptcy Court entered an Order authorizing DJD to purchase Debtor's assets for a revised purchase price of $8.1 million (the "DJD Sale Order"). (App. 00399-00406). The Order also terminated Arena's rights under the Agreement stating that "Arena could not fulfill its obligations under the Arena Sale Agreement and effectuate a closing of the transaction." (App. 00401). The sale of Debtor's assets to DJD was consummated for $8.1 million. (App. 00019). Shortly thereafter, Debtor's counsel made distributions from the DJD sale proceeds to the Debtor's creditors pursuant to the Plan and the Plan was consummated.

On February 4, 2005, Barefoot filed a motion directing that Arena's $250,000 deposit be disbursed to creditors pursuant to the liquidated damages clause. (App. 00407-00426). On March 9, 2005, the Appellants objected to the Motion and cross-moved for an order directing that the deposit be returned to Arena. (App. 00501-00522). On March

14, 2005, Barefoot and the major secured creditor, North Fork Bank, filed opposition to the cross-motion. The Appellants filed a reply on March, 17, 2005. (App. 00525-00534). On June 2, 2005, the Bankruptcy Court issued its Memorandum Opinion, granting Barefoot's motion and denying Appellants cross-motion. (App. 0007-00034). The Bankruptcy Court's Order implementing its ruling was entered on June 20, 2005. (App. 0004-0006). This appeal followed.

On appeal, Appellants ask this Court to determine whether the Bankruptcy Court erred in granting Barefoot's motion to direct Debtor to disburse the $250,000 deposit to creditors. More specifically, Appellants ask this court to determine whether the Bankruptcy Court erred in concluding that the November 11, 2005 Agreement between Arena and Debtor terminated, thereby invoking the liquidated damages provision of the Agreement. (Appellant's Br. 1). Appellants also ask this Court to determine whether the Bankruptcy Court erred in finding the liquidated damages provision of the Agreement valid and enforceable. (Id.).

## II.    THE BANKRUPTCY COURT'S OPINION

The first issue reached by the Bankruptcy Court was whether the Arena Agreement was terminated, thus invoking the liquidated damages clause, or was merely assigned. In its opinion, the Bankruptcy Court found, after a thorough review of the facts, that the Arena Agreement was in fact terminated. Judge Ferguson relied on the terms of the DJD Sale Order which clearly stated that Arena's rights had been terminated. The Bankruptcy Court rejected the cross-movants' argument that the Agreement had merely been assigned. The court found that DJD being substituted for Arena and assuming their

8

obligations under the Agreement was necessary in light of the termination of Arena's rights. The Bankruptcy Court found that the DJD Sale Order both terminated the Arena Agreement and incorporated the terms of the Agreement as modified by the DJD Sale Order.

The Bankruptcy Court next analyzed the enforceability of the liquidated damages clause focusing on whether the clause was reasonable under the totality of the circumstances. The court determined that based upon the negotiations leading up to the insertion of the liquidated damages clause, Arena essentially got the benefit of their bargain. Judge Ferguson also found that the amount of the liquidated damages clause was a reasonable forecast of just compensation for the potential harm to the Debtor and its creditors if Arena breached the Agreement and the Debtor was unable to close with an alternative plan funder.

### III.    DISCUSSION

### I.    Standard of Review

Pursuant to 28 U.S.C. § 158, the district courts shall have jurisdiction to hear appeals from final judgments, orders and decrees by bankruptcy courts. The proper standard of review to be applied by a district court when reviewing a ruling of a bankruptcy court is determined by the nature of the issues presented on appeal. Legal conclusions of a bankruptcy court are subject to de novo or plenary review by the district court. Donaldson v. Bernstein, 104 F.3d 547, 551 (3d Cir. 1997); Chemetron Corp. v. Jones, 72 F.3d 341, 345 (3d Cir. 1995), cert. denied, --- U.S. ---, 116 S.Ct. 1424 (1996). The factual determinations of the bankruptcy court are not to be set aside unless ?clearly

erroneous." See Fed. R. Bankr. P. 8013; Chemetron Corp., 72 F.3d at 345; In re Indian Plans Associates, Ltd., 61 F.3d 197, 203 (3d Cir. 1995).  On review of the factual findings of a bankruptcy court, a district court must ?give due regard to the opportunity of that court to judge, first-hand, the credibility of the witnesses." Fellheimer, Eichen & Braverman, P.C. v. Charter Technologies, Inc., 57 F.3d 1215, 1223 (3d Cir. 1995). Where a matter presents mixed questions of law and fact, it is appropriate to apply the relevant standard to each component of the issue.  Chemetron, 72 F.3d at 345.

**II.     Discussion of Appeal**

i.     Termination of the Agreement

Appellants argue the Bankruptcy Court erred in finding that the Agreement was terminated, thus invoking the liquidated damages provision.  Appellants base their argument largely on the language of the DJD Sale Order.  (Appellant's Br. 13).  The DJD Sale Order states that the Agreement  "is being assumed in its entirety" by DJD.  (App. 00404).  Appellants contend that the Agreement was not terminated, but rather was assumed by, or assigned to DJD.  Accordingly, Appellants assert that a closing did in fact occur under the Agreement, only with DJD in the position as the purchaser.  (Appellants' Br. 13-14).

This Court finds Appellants' argument on this point to be absurd.  The DJD Sale Order states that "[t]he Purchaser [DJD] shall be deemed the "Purchaser" as set forth in the Arena Sale Agreement assuming all rights, title and interests therein *as if* the Purchaser were substituted in for Arena as a party to the Arena Sale Agreement."  (App. 00401)(emphasis added).   The DJD Sale Order did not actually substitute DJD for Arena

10

under the Agreement in the sense of an assignee.  The Agreement was terminated, but its terms were restated and amended with a new purchaser.  Stated differently, the Debtor consummated the sale and delivery of the purchased assets to DJD as the direct purchaser – with the Agreement's terms being incorporated by reference in the DJD Sale Order – not as a party that assumed Arena's obligations under the Agreement.

Nonetheless, Appellants contend that the liquidated damages provision of the Agreement was not invoked because the requisite written notification was never provided.  (Appellants' Br. 15).  Section 8.2 of the Arena Agreement provided that if the Agreement terminated pursuant to Section 8.1,  "written notice thereof will forthwith be given to the other party and this Agreement will thereafter become void and have no further force and effect . . . ."  (App. 00336).  Appellant contends that pursuant to Section 8.2, written notice was required to declare the contract null and void for the purpose of invoking the liquidated damages provision.  (Appellants' Rep. Br. 7).

This Court finds Appellants argument unpersuasive.  Appellants argument is weakened by the conceded fact that while Arena did not have written notice of termination, they did in fact have actual notice.  Both Mr. Vanderbeek and Mr. DelMauro, two members of Arena, were present on January 24, 2005 when Judge Ferguson terminated the Agreement.  Moreover, Arena and all of its members were present on a conference call held by Judge Ferguson on January 7, 2005[4], during which Judge Ferguson notified the parties that if Arena failed to close, the court would allow

---

[4]Amongst those present on the conference call was: counsel for Arena Equity Partners, Gerard Catalanello, Jeffrey Vanderbeek and Stephen Gruhin.  (App. 00434-00435).

competing bids at an in-court auction during the next hearing. (App. 00453). Under these circumstances, actual notice was sufficient.

The Bankruptcy Court's determination that the Agreement with Arena as Purchaser was terminated was not clearly erroneous.

ii.    Validity of Liquidated Damages Provision

Having resolved that the liquidated damages provision was invoked, the next issue on appeal is whether the liquidated damages clause is enforceable. Whether a liquidated damages clause is enforceable is a question of law and therefore, the Bankruptcy Court's determination will be reviewed de novo.

Appellants argue the Bankruptcy Court erred in its determination that the liquidated damages provision was enforceable. (Appellants' Br. 16). Appellants contend that the Bankruptcy Court failed to undertake the proper analysis of the liquidated damages provision, and failed to consider actual damages in its determination of reasonableness. (Id. 17-18).

Under New Jersey law, whether a stipulated damages clause is enforceable depends on whether the provision is a valid liquidated damage clause, or an unenforceable penalty provision. In commercial contracts, stipulated damages clauses are presumptively valid, and the burden is on the party opposing enforcement to show that it is an unenforceable penalty. Metlife Capital Fin. Corp., v. Washington Ave. Assoc. L.P., 159 N.J. 484, 494, 732 A.3d 193 (1999). As the law has evolved, reasonableness has emerged as the standard in determining the validity of stipulated damages clauses. See Wasserman's Inc. v. Township of Middletown, 137 N.J. 238 (1994).

New Jersey courts have followed in the modern trend judging the reasonableness of a liquidated damages clause either at the time of contract formation, or at the time of the breach.  Id. at 251; Metlife Capital Financing Corp. v. Washington Avenue Associates L.P., 159 N.J. 484, 502.  In Wasserman's the New Jersey Supreme Court stated that, "[d]etermining enforceability at the time either when the contract is made or when it is breached encourages more frequent enforcement of stipulated damages clauses." 137 N.J. at 251-52.  The court went on to note that:

> In commercial transactions between parties with comparable bargaining power, stipulated damage provisions can provide a useful and efficient remedy.  Sophisticated parties acting under the advice of counsel often negotiate stipulated damages clauses to avoid the cost and uncertainty of litigation.  Such parties can be better situated than courts to provide a fair and efficient remedy.  Absent concerns about unconscionability, courts frequently need ask no more than whether the clause is reasonable.

Id. at 253 (internal citations omitted).

In making this determination the court should consider several non-exclusive factors: "the difficulty in assessing damages, the intention of the parties, the actual damages sustained, and the bargaining power of the parties."  Metlife, 159 NJ 484, 732 A.3d 493, 497 (1999).  "The overall single test of validity is whether the [stipulated damage] clause is reasonable under the totality of the circumstances."  Metlife, 159 N.J. at 495-496.

Appellants rely heavily on Nohe v Roblyn Development Corp.[5], for the proposition that where a non-breaching party suffers no actual damages, a liquidated

---

[5] 296 N.J. Super 172, 686 A.2d 382 (App. Div. 1997).

damages clause is unenforceable.  Nohe involved a contract for the sale of residential property between a corporate developer and purchasers for the sum of $651,488.00.  The contract included a stipulated damage provision permitting the seller to retain the deposit of $79,027 in the event of a breach by purchasers.  The purchasers breached the agreement.  The seller, however, suffered no damages from the breach.  In fact, it contracted to sell the residence to another buy for $193,995 more than the original purchase price.  Id. at 174.  The court returned the purchasers deposit based on the fact that the seller suffered no actual damages.  Id.

Nohe, however, is inapposite to the instant case.  Nohe involved a consumer contract and the deposit purchaser stood to lose represented 10% of the purchase price.  Here, Appellants negotiated a sophisticated commercial contract which they made sure contained a liquidated damages provision.  Additionally, the $250,000 deposit posted by Appellants represented only 3.5% of the purchase price.

Although New Jersey has adopted the modern position evaluating a stipulated damages provision at dual points of view, this Court finds the instant case to be *sui generis* because the precise clause Appellant objects to now was, according to the record, vigorously and vociferously urged by Appellant over Debtor's objections. (B. App. 11-17).   In short, to accept Appellants position would be to permit them to, in effect, take the position that with regards to damages in this case, "heads I win, tails you lose."

Appellants demanded this clause based upon their concern that in the then existing market, they would be exposed to very substantial actual damages should the sale not gone forward.  Having prevailed on this very contested point, this Court predicts that

the New Jersey Supreme Court, under these unique facts, would find Appellant estopped from arguing that as the breaching party they should not receive the benefit and detriment of their hard fought bargain.[6]  See Chattin v. Cape May Greene, Inc., 243 N.J. Super 590 (App. Div. 1990).  Accordingly, considering the totality of the circumstances, this Court finds the liquidated damages provision to have been reasonable at the time of contract, as well as at the time of breach.

### IV.    CONCLUSION

For the foregoing reasons, the June 20, 205 order of the Bankruptcy Court is **AFFIRMED.**   An appropriate order will follow.

                                          s/ Stanley R. Chesler
                                        Stanley R. Chesler, U.S.D.J.

---

[6]    The doctrine of judicial estoppel provides "that a party who, with knowledge of the facts, has assumed a particular position in judicial proceedings, and has succeeded in maintaining that position, is estopped to assume a position inconsistent therewith to the prejudice of the adverse party.".  Chattin v. Cape May Greene, Inc., 243 N.J. Super 590 (App. Div. 1990) (citing Brown v. Allied Plumbing & Heating Co., 129 N.J.L. 442, 446 (Sup. Ct. 1943); Linan-Faye Constr. Co. v. Housing Auth., 49 F.3d 915, 933 (3d Cir. 1995).   Although the liquidated damages provision Appellant fought for was not directly in the context of a judicial proceeding, it was incorporated into the Debtor's Plan which received approval by the Bankruptcy Court. See City of Atlantic City v. California Avenue Ventures, LLC, 21 N.J.Tax 511 (2004) (finding a party judicially estopped where the party had taken an opposite position in a settlement that had been approved by the court).